## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

WARREN MORRIS,

      Plaintiff,

v.

JACQUELINE LASHBROOK, MICHAEL D. SCOTT, MICHAEL CLARK, CHARLES PEARCE, DALTON PORTER, BOBBY JOHNSON, MARK MOORE, BRIAN FAGERLAND, GARY PRUITT, C/O EBERS, and CHAD WALL,

      Defendants.

Case No. 3:16-CV-00924-NJR-GCS

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Warren Morris is an inmate in the Illinois Department of Corrections ("IDOC") who brings this action under 42 U.S.C. § 1983 for excessive force and deliberate indifference (Doc. 107). Morris alleges he fractured his hand during a physical altercation in March 2016 while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") (*Id.* at p. 3). According to Morris, Defendants Jacqueline Lashbrook, C/O Ebers, and Dr. Michael Scott—the Warden of Menard, a correctional officer at Menard, and a physician at Menard, respectively—were aware of his injury but failed to timely provide him medical assistance (*Id.* at pp. 8-11). Morris alleges that Defendants Michael Clark, Charles Pearce, Dalton Porter, Bobby Johnson, Mark Moore, Brian Fagerland, Gary Pruitt, C/O Ebers, and Chad Wall, who were all correctional officers at Pinckneyville at the relevant times, repeatedly forced Morris

to wear handcuffs despite knowing his hand was broken and he was in severe pain (*Id.* at p. 11).

On July 31, 2018, Defendant Scott filed a motion for summary judgment (Doc. 116), and on August 14, 2018, Defendants Clark, Fagerland, Johnson, Lashbrook, Moore, Pearce, Porter, Pruitt, and Wall ("the IDOC Defendants") filed a motion for summary judgment (Doc. 119). Defendants argue Morris's claims fail on the merits because no reasonable jury could find they were deliberately indifferent to his hand injury or used excessive force against him. The motions were referred to United States Magistrate Judge Gilbert C. Sison, who issued a Report and Recommendation on September 6, 2019 (Doc. 137). He recommends granting Dr. Scott's motion for summary judgment and granting the IDOC Defendants' motion for summary judgment as to Lashbrook only (*Id.*). Objections to the Report and Recommendation were due on or before September 20, 2019 (*Id.*).

**UNDISPUTED FACTS**

The following facts are not disputed. Morris was involved in a physical altercation with another inmate at Pinckneyville on March 18, 2016, around 12:00 p.m. (Doc. 117, Ex. 2, pp. 29-31). Defendant Ebers arrived a few minutes later and saw that Morris's hand was swollen and that he was in pain, but Ebers did nothing to help him (*Id.* at p. 28). Around 3:00 p.m., Defendant Clark, who was aware of Morris's hand injury, handcuffed Morris and escorted him to the office for questioning (*Id.* at pp. 28, 30-31). Afterwards, Clark handcuffed Morris for a second a time and escorted him to the healthcare unit for medical care (*Id.* at pp. 24-25).

Morris saw Dr. Scott at the healthcare unit that same day and was diagnosed with a boxer's break (*Id.* at pp. 11, 13). Dr. Scott told Morris he would need a cast from an outside

orthopedist after his hand was x-rayed, but the x-ray technician would not be available for a few days (*Id.*). Morris stayed in the infirmary over the weekend and was given twenty-four ibuprofen pain pills for the pain (*Id.* at pp. 11-13). On March 21, 2016, Defendant Wall escorted Morris to the x-ray technician and handcuffed him despite knowing that Morris had an injury (*Id.* at pp. 12-13, 24-25). Morris received an x-ray on March 21, 2016; Dr. Scott reviewed the image and diagnosed Morris with a fractured third metacarpal (Doc. 117, Ex. 1, p. 7). Dr. Scott placed Morris's hand in an ortho-glass splint and told him he would be sent to an orthopedist (*Id.*). Dr. Scott testified that, in his medical opinion, Morris's fracture was not urgent because of the minimal angulation, the closed nature of the fracture, and the absence of neurological symptoms (*Id.*). At the conclusion of the appointment, Wall handcuffed Morris behind his back and transported him from the healthcare unit to the segregation unit (*Id.* at p. 25). Defendant Pearce strip-searched Morris and handcuffed Morris's hands behind his back to transport him to the shower, even though Morris told Pearce about his injury (*Id.*). Morris testified he was not receiving pain medication from March 21 through March 28, 2016 (*Id.* at p. 14). On March 28, he submitted a sick call request and received medication and a referral to see Dr. Scott (*Id.* at pp. 14-15; Doc. 117, Ex. 1, p. 20).

Morris treated with Gretchen Mason, a physician's assistant at the Orthopedic Institute of Southern Illinois, on April 5, 2016 (Doc. 117, Ex. 3, p. 6). She determined Morris had a clean fracture that was starting to heal and did not require surgery (*Id.* at p. 7). She taught Morris hand exercises to strengthen his hand (*Id.* at pp. 7-8). Mason does not believe that the two-week interval between Morris's injury and her appointment with him had any impact on the outcome of his injury (*Id.* at p. 8).

Dr. Scott saw Morris on April 8, 2016 for a follow-up appointment and prescribed

Motrin for pain (Doc. 117, Ex. 1, p.25). On May 3, 2016, Morris requested more pain medication and Dr. Scott prescribed Tylenol (*Id.* at p. 33). Morris attended a follow-up appointment with Mason on May 4, 2016; Mason determined Morris's hand was healed and she released him (Doc. 117, Ex. 3, p. 9). On May 27, 2016, Dr. Scott saw Morris for an appointment and Dr. Scott noted that Morris completed six weeks in a splint and showed healing without malalignment (*Id.* at p. 39). Morris complained of pain and Scott prescribed him Motrin and Tylenol, along with physical therapy (*Id.*).

### THE REPORT AND RECOMMENDATION

Judge Sison concluded that Defendant Lashbrook is entitled to summary judgment because her only role in the alleged deliberate indifference was her receipt of a grievance from Morris that she deemed a non-emergency. Morris concedes that his claim against Lashbrook should not survive summary judgment.

In regard to Dr. Scott, Judge Sison explained that Morris alleges Dr. Scott was deliberately indifferent for two reasons: (1) Dr. Scott waited two weeks after the x-ray of Morris's hand to request an outside orthopedic appointment for Morris and (2) Morris did not receive pain medication for a period of time and Dr. Scott was responsible for the distribution of Morris's medicine.

Judge Sison noted that to succeed on a claim that a prison official delayed, rather than denied medical assistance, Morris must provide verifying medical evidence that the delay, and not his underlying condition, caused some degree of harm. *Williams v. Liefer*, 491 F.3d 710, 715-16 (7th Cir. 2007). Morris "must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* Judge Sison concluded that there is no such evidence in this case. To the contrary, Gretchen Mason testified that the two-week

period between Morris's injury and her appointment with Morris had no impact on his condition. Additionally, Judge Sison concluded that there is no evidence Dr. Scott knew Morris was not receiving his pain medication as prescribed or that he ignored Morris's complaints of pain. Accordingly, Judge Sison recommends granting Dr. Scott's motion for summary judgment.

As to Defendants Clark, Fagerland, Johnson, Moore, Pearce, Porter, Pruitt, and Wall, Judge Sison recommends denying their motion for summary judgment. Morris alleges these Defendants used excessive force against him when they put him in handcuffs. Judge Sison noted that to succeed on these claims, Morris must show unnecessary and wanton infliction of pain. *See Rice ex. Rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 667 (7th Cir. 2012). The ultimate inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In this case, Defendants argue they are entitled to summary judgment because they did not apply the handcuffs to Morris in an abnormal manner. Instead, they handcuffed Morris according to the procedure for cuffing inmates after an altercation with another inmate. But Judge Sison recognized that officials are obligated to consider all relevant circumstances when determining whether handcuffing an inmate is appropriate. *See Rabin v. Flynn*, 725 F.3d 628, 636 (7th Cir. 2013). And in this circumstance, Defendants were required to consider Morris's injury before handcuffing him. The evidence indicates Morris told Defendants about his injuries and told them he was experiencing pain. Thus, a reasonable juror could conclude Defendants lacked a good-faith basis in their decision to handcuff Morris. Accordingly, Judge Sison concluded Defendants are not entitled to summary judgment just because they followed procedures for handcuffing an inmate.

Clark, Fagerland, Johnson, Moore, Pearce, Porter, Pruitt, and Wall also argue they are entitled to qualified immunity, which shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The qualified immunity inquiry has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate the official's conduct violated a constitutional right and (2) whether that right was clearly established at the time. *See Id.* at 232. Judge Sison explained that courts recognize constitutional violations when officials cause unnecessary pain when restraining prisoners. *See Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002). Moreover, these rights were clearly established at the time of Morris's alleged injury. Thus, Judge Sison recommends denying the motion for summary judgment.

### DISCUSSION

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). Where neither timely nor specific objections to the Report and Recommendation are made, however, this Court need not conduct a *de novo* review of the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985). Instead, the Court should review the Report and Recommendation for clear error. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). A judge may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The parties did not object to the Report and Recommendation before the September 20, 2019 deadline (Doc. 137). The Court has carefully reviewed the record and Judge Sison's Report and Recommendation. Following this review, the Court fully agrees with the findings, analysis, and conclusions of Judge Sison and **ADOPTS** the Report and Recommendation in its entirety. The motion for summary judgment filed by Dr. Scott (Doc. 116) is **GRANTED.** and the motion for summary judgment filed by the IDOC Defendants (Doc. 118) is **GRANTED** as to Lashbrook and **DENIED** as to Clark, Fagerland, Johnson, Moore, Pearce, Porter, Pruitt, and Wall.

The Clerk of Court is **DIRECTED** to enter judgment accordingly at the conclusion of the case, and  Judge Sison is **DIRECTED** to set this matter for a settlement conference.

**IT IS SO ORDERED.**

**DATED:  September 25, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**